UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YVONNE TAYLOR,

        Plaintiff,

                                      Case No. 05-CV-70489

vs.                                  HON. GEORGE CARAM STEEH

CITY OF DETROIT, et al.,

        Defendants.

_____/

ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
(#50) AS TO PLAINTIFF'S FEDERAL CLAIMS ONLY AND
DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (#50)
AS MOOT UPON DISMISSING PLAINTIFF'S STATE LAW CLAIMS
WITHOUT PREJUDICE

Defendants City of Detroit and Detroit Police Officers Fred Watkins, Roland Brown, Michael Dekun, Kathy Singleton, Jeffrey Clyburn, David Jones, Kendra Davis, and Ron Gibson move for summary judgment as to plaintiff Yvonne Taylor's federal Fourth Amendment claims of unreasonable search and seizure premised on an alleged invalid search warrant, lack of probable cause, and failure to knock and announce. Defendants also move for summary judgment of Taylor's state law claims of assault and battery, false arrest/false imprisonment, intentional infliction of emotional distress, and gross negligence. A hearing was held on January 9, 2007. For the reasons set forth below, defendants' motion for summary judgment will be GRANTED as to Taylor's federal claims. Taylor's state law claims will be DISMISSED without prejudice with the court declining to exercise supplemental jurisdiction.

**BACKGROUND**

Yvonne Taylor filed a federal complaint on February 7, 2005 alleging City of Royal Oak and City of Detroit Police Officers searched her Royal Oak apartment on March 23, 2005, failed to "knock and announce" before entering, screamed at her to get her hands up, and pointed guns at her head.  The Officers allegedly did not initially inform her of the purpose of the search nor show her a warrant, asking her only after the search was completed whether the apartment was used for drugs and whether she knew a "Damario Garrison."  No contraband was found inside the apartment.  Count I alleges a Fourth Amendment claim of lack of a validly issued warrant or probable cause.  Count II alleges a Fourth Amendment claim of failure to "knock and announce."  Counts III and IV allege § 1983 municipal liability against Detroit and Royal Oak.  Counts V-VIII allege state law claims of assault and battery, false arrest/false imprisonment, intentional infliction of emotional distress, and gross negligence. All City of Royal Oak defendants were dismissed by stipulation on July 6, 2005.

**SUMMARY JUDGMENT**

Federal Rule of Civil Procedure 56(c) empowers the court to render summary judgment "forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  See Redding v. St. Eward, 241 F.3d 530, 532 (6th Cir. 2001).  The standard for determining whether summary judgment is appropriate is "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'"  Amway Distributors Benefits Ass'n v. Northfield Ins. Co.,

2

323 F.3d 386, 390 (6th Cir. 2003) (quoting <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 251-52 (1986)). The evidence and all reasonable inferences arising therefrom must be construed in a light most favorable to the non-moving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Redding</u>, 241 F.3d at 532 (6th Cir. 2001). If the movant establishes by use of the material specified in Rule 56(c) that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law, the opposing party must come forward with "specific facts showing that there is a genuine issue for trial." <u>First Nat'l Bank v. Cities Serv. Co.</u>, 391 U.S. 253, 270 (1968); <u>see</u> <u>also</u> <u>McLean v. 988011 Ontario, Ltd.</u>, 224 F.3d 797, 800 (6th Cir. 2000). Mere allegations or denials in the non-movant's pleadings will not meet this burden, nor will a mere scintilla of evidence. <u>Anderson</u>, 477 U.S. at 252. Rather, there must be evidence on which a jury could reasonably find for the non-movant. <u>McLean</u>, 224 F.3d at 800 (citing <u>Anderson</u>, 477 U.S. at 252).

## I. § 1983 Municipal Liability and
## Federal Claim of Failure to "knock and announce"

Taylor concedes that she can neither prove an actionable § 1983 municipal liability claim nor her Fourth Amendment claim of failure to "knock and announce" as against the City of Detroit.[1] As a matter of law, defendant City of Detroit is entitled to summary judgment of Count III alleging municipal liability, and the Detroit defendants are entitled to

---

[1] Plaintiff's Counsel conceded at the January 9, 2007 hearing that he cannot prove his failure to "knock and announce" claim given Taylor's testimony that she was sleeping when the Officers first entered the apartment. <u>See</u> <u>Pierce v. Burkhart</u>, No. 03-74250, 04-74185, 2005 WL 1862416, at *6 (E.D. Mich. Aug. 4, 2005) (Edmunds, J.) (reasoning it would be improper to infer that officers did not "knock and announce" from a sleeping witness's testimony).

summary judgment of Count II alleging failure to "knock and announce." Amway
Distributors, 323 F.3d at 390.

## II. Record Evidence

Defendant Detroit Police Sergeant Fred Watkins executed a March 23, 2003 affidavit
in support of a search warrant request attesting that defendant Detroit Officer Ron Gibson
told him that he was investigating a complaint at 18876 Cardoni in Detroit when he
observed an assault rifle and marijuana in open view, leading to a search of the premises
that disclosed several rifles, a handgun, and a freezer bag and garbage bag containing
marijuana. Watkins attests that bank records in the name of "Damario Garrison" for 3015
W. 13 Mile Road #304 (Taylor's Royal Oak apartment address) were also found at the
Detroit residence, and that 23 pounds of marijuana, four assault rifles, three handguns, and
"narcotics proceeds" were confiscated from the Detroit home. Sergeant Watkins further
attests in the affidavit that Damario Garrison was arrested at the scene. As a result of
Watkins' March 23, 2003 affidavit, a March 23, 2003 search warrant for Taylor's apartment
was issued by a Michigan Wayne County Circuit Court Judge authorizing the seizure of all
suspected controlled substances, all items used in the sale and distribution of controlled
substances, and all suspected narcotic proceeds and monies.

Taylor testified that she was asleep in the Royal Oak apartment bedroom when the
Officers began executing the warrant, that she thought she was dreaming when she heard
someone say "Police," and that she eventually woke up "with a gun with a light, a bright
light in my face." Tr, at 18-19. Taylor further testified that she was told to get up, was
handcuffed, and then was made to sit on the floor with a female Officer in the room while
her apartment was searched. Tr, at 21.

4

### III. Remaining Federal Fourth Amendment Claims

### A. <u>Invalid Search Warrant and Lack of Probable Cause</u>

Taylor's only challenge to the validity of the warrant and the existence of probable cause is that the defendants failed to produce the bank records of Damario Garrison allegedly found at the Detroit residence during discovery.  Taylor's argument fails to make a requisite "substantial preliminary showing" that Sergeant Watkins' attestations about the bank records were false and made in knowing or reckless disregard for the truth.  <u>See</u> <u>Perlman v. City of Chicago</u>, 801 F.2d 262, 264-65 (7th Cir. 1986) (applying criminal procedure for challenging truthfulness of affidavit articulated in <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978) to civil § 1983 claims).  Taylor's implication that Sergeant Watkins and/or Officer Gibson falsely stated that Garrison's bank records bearing Taylor's address were found at the Detroit residence is unaccompanied by an offer of proof, such as an affidavit executed by Garrison attesting that he had no such account.  <u>See</u> <u>Franks</u>, 438 U.S. at 171.  The court notes that Taylor did not move to compel disclosure of the bank records during discovery.

With Sergeant Watkins' affidavit remaining intact, and granting deference to the Michigan Circuit Court Judge that issued the search warrant, there is a substantial basis for finding that the affidavit established probable cause to believe that evidence of drug-related criminal activity would be found at Taylor's apartment residence.  <u>United States v. Davidson</u>, 936 F.2d 856, 859 (6th Cir. 1991).  Taylor's reliance on <u>Painter v. Robertson</u>, 185 F.3d 557 (6th Cir. 1999) for the proposition that the existence of probable cause is usually a jury question is misplaced as <u>Painter</u> involved a warrantless search.  Defendants are entitled to summary judgment of Taylor's federal claims of invalid search warrant and

lack of probable cause as a matter of law.  Amway Distributors, 323 F.3d at 390.

### B. Unreasonable Warrant Execution and Use of Force

In responding to the Detroit defendants' motion for summary judgment, Taylor states that "it is not the issue regarding the validity of the warrant, but the manner of its execution."  Plaintiff's December 13, 2006 Response Brief, at 8.  Taylor then proceeds to argue that the search warrant was unreasonably executed with unreasonable force in that: (1) Damario Garrison was already in custody when the search of Taylor's apartment commenced; (2) the search warrant was executed at night; (3) the Officers shined a light in Taylor's eyes, pointed a gun to her head, and then handcuffed her in her night-clothes; and (4) the small size of the apartment made it immediately apparent that no contraband was inside.  Although, as the defendants argue, Count I does not expressly allege an unreasonable execution of the warrant or unreasonable use of force, the Federal Court Rules permit the amendment of pleadings to conform to the evidence.  See Fed. R. Civ. P. 15(b).  The court therefore reaches the merits of Taylor's asserted unreasonable warrant-execution and unreasonable force claims.

### i. Official Capacity Liability

Taylor has conceded that defendant City of Detroit is entitled to summary judgment because she cannot prove an actionable § 1983 municipal liability claim.  To the extent Taylor alleges the defendant Detroit Police Officers are liable in their official capacities, the Officers are likewise entitled to summary judgment.  See Barber v. City of Salem, 953 F.2d 232, 237 (1992) (§ 1983 claims alleged against a city official acting in his official capacity are treated as an action alleged against the municipality); Amway Distributors, 323 F.3d at 390.  To prevail against one or more of the eight defendant Detroit Police Officers on an

§ 1983 claim, Taylor must prove the Officers are liable in their individual capacities.

### ii. Individual Liability and Qualified Immunity

"[Q]ualified immunity protects a public official from being sued [in their individual capacity] as long as the official 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" <u>Crockett v. Cumberland College</u>, 316 F.3d 571, 579 (6th Cir. 2003) (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982)). Whether an officer is entitled to qualified immunity involves a two-part test: (1) whether the facts viewed in a light most favorable to the plaintiff show that the officer's conduct violated a constitutional right; and (2) if so, "whether that right was clearly established such that a reasonable official, at the time the act was committed, would have understood that his behavior violated that right." <u>Comstock v. McCrary</u>, 273 F.3d 693, 701 (6th Cir. 2001) (quoting <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S.Ct. 2151, 2156 (2001)). The § 1983 plaintiff has the burden of proving that state officers are not entitled to qualified immunity. <u>Ciminillo v. Streicher</u>, 434 F.3d 461, 466 (6th Cir. 2006).

Police officers enjoy lawful authority to detain an individual occupying a home that is the subject of a search warrant for contraband, even if that occupant is not named in the warrant. <u>Muehler v. Mena</u>, 544 U.S. 93, 98, 100 n.2 (2005) (citing <u>Michigan v. Summers</u>, 452 U.S. 692 (1981)).

> <u>Summers</u> makes clear that when a neutral magistrate has determined police
> have probable cause to believe contraband exists, "[t]he connection of an
> occupant to [a] a home" alone "justifies a detention of that occupant."

<u>Muehler</u>, 544 U.S. at 99 n.2 (quoting <u>Summers</u>, 452 U.S. at 703-704). There is no dispute that Taylor was occupying the Royal Oak apartment at the time the Officers began executing the search warrant authorizing a search and seizure of the apartment for

controlled substances.  The fact that Damario Garrison was already in custody did not diminish the Officers' authority to execute the warrant or to detain Taylor in that a Michigan Circuit Court Judge had determined that probable cause existed to search the apartment for drug-related contraband.

Taylor's argument that it was unreasonable to execute the warrant at night is not well taken.  United States v. Tucker, 313 F.3d 1259 (10th Cir. 2002), relied upon by Taylor, initially recognized the common law's strong aversion to nighttime searches prior to the adoption of the Bill of Rights, then continued by noting the more recent Supreme Court decision in Gooding v. United States, 416 U.S. 430 (1974), holding that 21 U.S.C. § 879[2], governing federal search warrants for controlled substances, "requires no special showing for a nighttime search, other than a showing that the contraband is likely to be found on the property or person to be searched at that time."  Tucker, 313 F.3d at 1264 (quoting Gooding, 416 U.S. at 458).  The Tucker court declined to reach the issue of whether the statute was unconstitutionally broad, and instead applied a Fourth Amendment reasonableness standard to the particular circumstances of the case while recognizing that a substantial risk of destruction or removal of evidence, or a risk personal injury, justifies the nighttime execution of a search warrant.  Id. at 1265-66.  The Tucker court found that the nighttime execution of a search warrant for methamphetamine and instrumentalities for its manufacture with a residential trailer was reasonable "in order to reduce the danger to the occupants, the officers, and others in the vicinity."  Id. at 1266.  Here, consistent with

---

[2] "A search warrant relating to offenses involving controlled substances may be served at any time of the day or night if the judge or United States magistrate judge issuing the warrant is satisfied that there is probable cause to believe that grounds exist for the warrant and for its service at such time."

the reasoning in <u>Tucker</u>, the undisputed March 23, 2003 search warrant for controlled substances believed to be within Taylor's apartment, premised on 23 pounds of marijuana, four assault rifles, and three handguns being found at the Detroit residence that same day, coupled with Damario Garrison's bank records bearing the Royal Oak apartment address, made it reasonable for an officer to believe that risks of destruction or removal of similar evidence and risks of personal injury to officers and others justified the nighttime execution of the warrant.  <u>Id</u>. at 1265-66.

United States v. Becker, 485 F.2d 51 (6th Cir. 1973) does not support Taylor's position that the Sixth Circuit retains a strong aversion to the nighttime executions of search warrants.  <u>Becker</u> involved a warrantless search.  <u>Id</u>. at 52-53.  Further, the <u>Becker</u> court's concern regarding the nighttime service of federal warrants was premised on a "positive information" requirement formerly found in Federal Rule of Criminal Procedure 41(c)[3] governing search warrants.  <u>Id</u>. at 54.  In 1974, one year after <u>Becker</u>, the Supreme Court held in <u>Gooding</u> that Federal Rule of Criminal Procedure 41 is inapplicable to search warrants governed by narcotic search warrant statutes such as 21 U.S.C. § 879, which authorizes the nighttime execution of a warrant on "a showing that the contraband is likely to be found on the property or person to be searched at that time."  <u>Gooding</u>, 416 U.S. at 439, 458.

Taylor's assertions that the Officers shined a light in her eyes immediately upon entering the apartment, pointed a gun to her head, and then handcuffed her in her night-

---

[3] Federal Rule of Criminal Procedure 41 currently reads in part: ". . . .  The warrant must command the officer to: . . . execute the warrant during the daytime, unless the judge for good cause expressly authorizes execution at another time."  Fed. R. Crim. P. 41(e)(2)(B).

clothes, attempt to establish a § 1983 unreasonable use of force claim.  The authority to detain an occupant during execution of a search warrant includes the authority to use reasonable force to effectuate the detention.  <u>Muehler</u>, 544 U.S. at 98-99 (citing <u>Graham v. Connor</u>, 490 U.S. 386, 396 (1989)).  Whether the force employed was constitutionally reasonable requires careful attention to the facts and  circumstances of the particular case, "including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." <u>Id</u>.  The question of reasonableness is an objective test: "whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying motive or intent." <u>Id</u>. at 397 (internal quotations and citations omitted).

A police officer's use of correctly applied handcuffs to detain the occupant of a home during the execution of a narcotics search warrant is generally considered reasonable due to the inherently dangerous situation which "may give rise to sudden violence or frantic efforts to conceal or destroy evidence." <u>Muehler</u>, 544 U.S. at 99 -100 (quoting <u>Summers</u>, 452 U.S. at 702-703).  "[T]he risk of harm to police officers and occupants in such situations is minimized 'if the officers routinely exercise unquestioned command of the situation.'" <u>Muehler</u>, 544 U.S. at 98 (quoting <u>Summers</u>, 452 U.S. at 703).  A panel of the Sixth Circuit has held that it was objectively reasonable for federal agents to conduct a protective sweep of a residence subject to a narcotics search warrant, and to handcuff all of the occupants while the search was being completed.  <u>United States v. Fountain</u>, 2 F.3d 656, 659-660 (6th

Cir.1993), overruled on other grounds, Trepel v. Roadway Express, Inc., 194 F.3d 708, 717

(6th Cir.1999).

> When occupants of a residence are detained during the execution of a search warrant, the circumstances ordinarily will justify more intrusive behavior by the police than in a typical on-the-street detention.  When the ATF agents entered Fountain's home pursuant to the warrant to search for narcotics, they faced a confined, unfamiliar environment that was likely to be dangerous.  McEaddy and the others were handcuffed and forced to lie face down on the living room floor while the search was conducted.  Concern for the safety of the agents and the need to prevent disposal of any narcotics on the premises, justified the restraint of the occupants, particularly in the circumstances of this case, where the search was part of a narcotics investigation and weapons had been seized from the home one month earlier.  The "character" of the intrusion on McEaddy and its "justification" were reasonable and proportional to law enforcement's interests in preventing flight in the event incriminating evidence is found and in minimizing the risk of harm to officers.  These concerns plainly outweighed the intrusion experienced by McEaddy in being required to be on the living room floor while the search was completed.  And those concerns are the same regardless of whether the individuals present in the home being searched are residents or visitors.

Id. at 663.  See also Battiste v. Rojeski, 257 F.Supp.2d 957, 960 (E.D. Mich. 2003)

(applying Graham factors in concluding it was "manifestly reasonable" for police officers

investigating violent felonies with the use of a residential search warrant for firearms to

open the door, yell at the occupant and knock her to the ground, pull her to a staircase and

place a knee on her back, handcuff her for five minutes, and make her sit on a couch in

only her nightgown while "at all times guns were pointed at her and she was held against

her will").

Viewing all of the facts in a light most favorable to Taylor, Taylor cannot show as a

matter of Fourth Amendment jurisprudence that the Officers' execution of the search

warrant for drug contraband was unreasonable or that the Officers applied unreasonable

force, or that the Officers, at the time they executed the warrant and applied force, would

11

have understood that their behavior violated the Fourth Amendment.  Comstock, 273 F.3d at 701.  The severity of the suspected crime at issue, possession of large amounts of drugs, created an inherently dangerous situation for executing the search warrant, permitting the Officers to take "unquestioned command" to protect themselves and others. As in Fountain, the Detroit Officers were in possession of a search warrant for drug contraband, and entered a confined apartment unfamiliar to them that was inherently dangerous notwithstanding that Garrison was already in custody; a reasonable police officer could believe that Garrison was not acting alone in the possession of 23 pounds of marijuana, four assault rifles, and three handguns at the Detroit residence.  Relying on the search warrant, reasonable officers could believe prior to entering the apartment that substantial risks existed for the destruction or removal of evidence and for personal injury, and that the apartment's yet to be known occupants might resist arrest or attempt to flee the scene.  Taylor does not allege or proffer evidence that the Officers continued to aim a weapon at her after she was handcuffed, that the handcuffs were improperly applied, or that she was detained in handcuffs for an unreasonable period of time after the search of the apartment was completed.  Taylor's argument that the apartment's small size made it immediately apparent that no contraband would be found is conclusionary, and improperly applies 20/20 hindsight vision.  Nothing in the record suggests that any of the Officers knew the outlay of the apartment before entry, and it was unquestionably reasonable for the Officers to secure Taylor before conducting the search.  Fountain, 2 F.3d at 659-660, 663. Under the totality of the combined circumstances, the defendant Officers are entitled to summary judgment of Taylor's recently advanced individual liability claims of unreasonable execution of the search warrant and unreasonable use of force because Taylor cannot

12

prove a Fourth Amendment violation and, in the alternative, because the Officers are entitled to qualified immunity. Comstock, 273 F.3d at 701; Amway Distributors, 323 F.3d at 390.

### IV. Remaining State Law Claims

Taylor's remaining claims are state law claims alleging respectively in Counts V-VIII assault and battery, false arrest/false imprisonment, intentional infliction of emotional distress, and gross negligence. A district court may decline to exercise supplemental jurisdiction over state law claims if the district court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3). As reasoned herein, defendants are entitled to summary judgment of Taylor's federal § 1983 claims over which the court has original jurisdiction under 28 U.S.C. §§ 1331 and 1343.

> "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." Musson Theatrical, Inc. v. Federal Express Corp., 89 F.3d 1244, 1254 (6th Cir.1996) (citation omitted). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." Id. at 1254-55 (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); see also Brandenburg v. Housing Authority of Irvine, 253 F.3d 891, 890 (6th Cir.2001) ("In fact, the usual course is for the district court to dismiss state-law claims without prejudice if all federal claims are disposed of on summary judgment."); Aschinger v. Columbus Showcase Co., 934 F.2d 1402, 1412 (6th Cir.1991) (noting that only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial").

Andonian v. Autoalliance International, Inc., No. 01-CV-73918-DT, 2003 WL 2010745, at *18 (Feb. 25, 2003). Pursuant to 28 U.S.C. § 1367(c)(3), and consistent with Andonian and the authority cited therein, the court will exercise its discretion and dismiss Taylor's remaining state law claims without prejudice. Taylor's motion for summary judgment as to

the remaining state law claims will be denied as moot.

## V. Conclusion

Defendants City of Detroit's and the individually named Officers' motion for summary judgment is hereby GRANTED, IN PART, as to Yvonne Taylor's federal 42 U.S.C. § 1983 claims alleging Fourth Amendment violations as set forth in Counts I, II, and III, including claims advanced by Taylor in opposing summary judgment of unreasonable execution of warrant and unreasonable use of force.  Counts I, II, and III are hereby DISMISSED with prejudice.  Taylor's state law claims as alleged in Counts V-VIII are hereby DISMISSED without prejudice with the court declining to exercise supplemental jurisdiction.  Defendants' motion for summary judgment of Taylor's state law claims is hereby DENIED as MOOT.

SO ORDERED.

Dated:  January 23, 2007

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on January 23, 2007, by electronic and/or ordinary mail.

s/Josephine Chaffee
Deputy Clerk